United States District Court
Southern District of Texas
**ENTERED**
February 07, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RONALD BUTLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-578 |
| | § | |
| ENSCO INTERCONTINENTAL | § | |
| GMBH *et al.*, | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Ronald Butler, a seaman, sued in Texas state court under the Jones Act, seeking damages for injuries arising from an incident with a fellow crewman on a drilling rig off the Angola coast. Butler sued ENSCO Incorporated, a Texas corporation, alleging that it employed him and owed and operated the drilling rig. He later added ENSCO Intercontinental GmbH and ENSCO Limited. The defendants removed to federal court, asserting that the in-state defendant was improperly joined or, alternatively, that foreign law, not the Jones Act, applied. Butler moved to remand, the defendants responded, and Butler replied. (Docket Entry Nos. 6, 16, 18). For the reasons explained in detail below, the court grants the remand motion, and remands the case to the 157th Judicial District Court of Harris County, Texas by separate order.

**I.     Background**

Butler alleges that while he was working as a seaman on the ENSCO DS-6, an offshore drilling rig deployed off the Angola coast, a fellow seaman "knocked" him to the ground, causing "serious injuries to his left ankle and other parts of his body." (Docket Entry No. 1-3 at 55–56).

On September 4, 2015, Butler, an Oklahoma citizen, sued ENSCO Incorporated, a Texas corporation, in Texas state court. He asserted claims under the Jones Act, 46 U.S.C. § 30104, and the general maritime law of the United States. His claims included that ENSCO Incorporated was negligent, negligent per se, and grossly negligent for failing to properly supervise the crew; failing to properly train its employees; failing to provide adequate medical treatment; operating the vessel with an inadequate crew; failing to maintain the vessel; failing to safely navigate or operate the vessel; and violating Coast Guard, OSHA, BSEE rules, or other regulations. (*Id.* at 56). Butler also alleged vicarious liability for ENSCO Incorporated's employees' and agents' negligence and asserted a claim for maintenance and cure. (*Id.* at 56–57).

ENSCO Incorporated answered asserting, among other things, that it was an improper party because it neither owned nor operated the drilling rig and it did not employ Butler. (*Id.* at 7–8). ENSCO Incorporated asserted that the proper parties were ENSCO Intercontinental GmbH, the Swiss-based owner and operator of the drilling ship, and ENSCO Limited, the Cayman Islands corporation that employed Butler. (*Id.* at 8). ENSCO Incorporated moved for summary judgment on an improper-party theory. (*Id.* at 18). Butler amended his state-court petition to add ENSCO Intercontinental GmbH and ENSCO Limited, but he did not seek to dismiss ENSCO Incorporated. (*Id.* at 54). ENSCO Limited and ENSCO Intercontinental GmbH removed on the basis of diversity of citizenship, asserting that ENSCO Incorporated, the Texas corporation, was improperly joined and that the Jones Act did not apply. (Docket Entry No. 1). Butler moved to remand. (Docket Entry No. 6).

**II.     Discussion**

Butler raises two arguments for remand.[1] One is that because this is a Jones Act case, it cannot be removed to federal court. The ENSCO entities contend that the Jones Act does not apply, but even if it does, ENSCO Incorporated is not Butler's employer and was therefore improperly joined. ENSCO Limited and ENSCO Intercontinental do not dispute that if the Jones Act applies, they are proper parties to this suit.[2] Butler's second argument is that ENSCO Incorporated is a Texas citizen and the forum, or in-state, defendant rule prevents removal. The ENSCO entities contend that ENSCO Incorporated was improperly joined, so the forum-defendant removal prohibition did not apply. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.");

---

[1] Butler also argued in his motion that the foreign ENSCO defendants did not properly allege their citizenship. Although he did not reurge this argument in his reply, the court finds that both ENSCO Intercontinental GmbH and ENSCO Limited adequately alleged their citizenship. *See Stiftung v. Plains Mktg., L.P.*, 603 F.3d 295, 298 (5th Cir. 2010) (the only relevant factor in considering whether a party was a foreign citizen under the removal statute was whether the party was a citizen under the foreign country's law). ENSCO Intercontinental is a GmbH ("Gesellschaft mit beschränkter Haftung" or "company with limited liability"), which is considered a "separate legal personality" under Swiss law. Article 772 of the Swiss Code of Obligations (2012); *see Batson Yarn & Fabrics Mach. Grp., Inc. v. Saurer-Allma GmbH-Allgauer Maschinenbau*, 311 F. Supp. 68, 70 (D.S.C. 1970) (a GmbH created diversity under 1332(a)(2)). ENSCO Limited is a limited liability company organized under the laws of the Cayman Islands, which gives these companies the same rights and privileges of a "natural person of full capacity." Companies Law § 27(2), Cayman Islands (2010); *see Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 399–400 (7th Cir. 1986) (diversity in suit against Cayman Islands company).

[2] There are other pending motions filed by the foreign ENSCO entities, including to dismiss for lack of personal jurisdiction. The parties suggested, and the court agreed, to decide the remand motion before addressing personal jurisdiction. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) ( "In cases removed from state court to federal court, as in cases originating in federal court, there is no unyielding jurisdictional hierarchy" requiring a court to decide challenges to its subject-matter jurisdiction before deciding personal jurisdiction.).

*In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 392 (5th Cir. 2009) (the forum-defendant rule is a procedural bar to removal, not a jurisdictional one).

### A. The Jones Act Claims

As a general rule, Jones Act claims are not removable. *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995). The Jones Act, 46 U.S.C. § 688, incorporates general provisions of the Federal Employers' Liability Act, which bars removal. 28 U.S.C. § 1445(a). ENSCO Incorporated contends that Butler has no reasonable possibility of recovery against it under the Jones Act, because ENSCO Incorporated neither owned, operated, nor managed the drilling rig where Butler worked, and did not employ Butler. An improperly pleaded Jones Act claim does not bar removal. *Burchett*, 48 F.3d at 175–76. "In most cases, to determine whether the plaintiff has any possibility of recovery against the . . . defendant, the court should conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim" against the defendant. *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (internal quotation marks omitted). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* "However, where the plaintiff's complaint has misstated or omitted discrete facts that would determine the propriety of joinder, the court may instead pierce the pleadings and conduct a summary inquiry." *Id.* (internal quotation marks omitted). Such a summary inquiry is appropriate only "to identify the presence of discrete and undisputed facts that would preclude the plaintiff's recovery" against the defendant. *Id.* at 136–37. "The decision to pierce the pleadings lies within the discretion of the trial court." *Id.* at 137. "While we have cautioned against pretrying a case to determine removal jurisdiction," a district court may "use a summary judgment-like procedure for disposing of

4

fraudulent pleading claims." *Burchett*, 48 F.3d at 176. The district court may deny remand if, after resolving "all disputed questions of fact and any ambiguities in the current controlling substantive law in plaintiff's favor," there is "no reasonable basis for predicting that the plaintiff might establish liability" under the Jones Act. *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 356–57 (5th Cir. 1999) (quoting *Burchett*, 48 F.3d at 176).

"Jurisdictional facts are determined at the time of removal, not by subsequent events." *Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 635 (5th Cir. 2014). A court must inquire into the jurisdictional facts regardless of whether the court examines the plaintiff's chance of surviving a Rule 12(b)(6) challenge or, instead, pierces the pleadings. *Flagg*, 819 F.3d at 137.

The initial questions are whether the Jones Act applies and whether Butler has a reasonable basis for establishing liability under the Jones Act. The ENSCO defendants argue that Butler cannot establish Jones Act liability because Marshall Islands law, not United States law, applies to his claims. If the Jones Act applies, ENSCO Incorporated contends that it was nevertheless improperly joined because it was not Butler's employer. If the Jones Act applies, ENSCO Limited and ENSCO Intercontinental do not dispute that they were properly joined as Butler's employer and the rig's owner and operator; if ENSCO Incorporated is subject to liability under the Jones Act, it too is a proper party to the case.[3]

---

[3] While the foreign ENSCO entities do not dispute that they could be proper defendants if the Jones Act applied, they filed motions to dismiss for lack of personal jurisdiction. Because this court finds the Jones Act applies, the personal jurisdiction question is left for the state court's determination.

### 1.     **The Jones Act Applies**

Using the analysis of *Lauritzen v. Larsen*, 345 U.S. 571 (1953), *Romero v. International Terminal Operating Co.*, 358 U.S. 354 (1959) and *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306 (1970), the court must determine whether the Jones Act and the general maritime law of the United States, or Marshall Islands law, applies to Butler's claims. *See Solano v. Gulf King 55*, 212 F.3d 902, 905 (5th Cir. 2000). In *Lauritzen*, the Supreme Court set out eight nonexhaustive factors bearing on this choice-of-law question:

> (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured; (4) the allegiance of the defendant shipowner; (5) the place of contract; (6) the inaccessibility of the foreign forum; (7) the law of the forum; (8) the shipowner's base of operations.

*Id.* (citing *Lauritzen*, 345 U.S. at 583–90). "*Lauritzen* taught that courts should ascertain and value the enumerated points of contact between the transaction and the governments whose competing laws are involved." *Id.* (citing *Lauritzen*, 345 U.S. at 582).

The factors do not have equal weight. "[T]he significance of each factor must be considered within the particular context of the claim and the national interest that might be served by the application of United States law." *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1119 (5th Cir. 1995) (quoting *Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 282 (5th Cir. 1991)). "[T]he significance of each factor in a nontraditional maritime context like offshore oil production may vary from that in the traditional shipping context in which the *Lauritzen-Rhoditis* test arose." *Id.*; *see also Bailey v. Dolphin Int'l, Inc.*, 697 F.2d 1268, 1275 (5th Cir.1983), *overruled on other grounds by In re: Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir. 1987) (a

jack-up drilling rig); *Cuevas v. Reading & Bates Corp.*, 770 F.2d 1371, 1379 (5th Cir. 1985) (same). In nontraditional "brownwater" cases like this one, the place of the wrongful act, the allegiance or domicile of the injured, and the place of the contract, are more important than in "bluewater" cases. *Coats*, 61 F.3d at 1119–20; *see* Jack L. Albritton, *Choice of Law in a Maritime Personal Injury Setting: The Domestic Jurisprudence*, 43 LA. L. REV. 879 (1983) (discussing the difference between "bluewater" and "brownwater" cases).

"Each factor is to be weighed to determine whether all the factors add up to the necessary substantiality of contacts between the transaction at issue and the United States." *Solano*, 212 F.3d at 905 (citing *Rhoditis*, 398 U.S. at 309 n.4). Each factor must be implemented to effectuate the purposes served by the Jones Act. *Id.* (citing *Rhoditis*, 398 U.S. at 309 n.4).

### a. The Place of the Wrongful Act

When a plaintiff's injury stems from work on a permanently situated offshore oil rig or work platform, the place of the wrong assumes greater importance than in a more traditional maritime case, in which the vessel location changes constantly. *Fogleman*, 920 F.2d at 282. Butler was injured on a rig off the Angola coast. He argues that he continued to sustain injuries when he returned home to the United States because he was not paid for the harm he suffered. Butler has not cited, and the court has not found, a case supporting this interpretation of the "place" of the wrongful act. *Cf. id.* (the place of the wrongful act was the location of the permanent oil platform where plaintiff was injured); *Coats*, 61 F.3d at 1120 (same). The place of the wrongful act is Angola.

### b.     The Law of the Flag

The rig flew the Marshall Islands flag.  The parties agree that this factor points to applying Marshall Islands law, but the parties dispute how much weight this factor deserves.

While the "law of the flag is generally of cardinal importance," *Solano*, 212 F.3d at 905 (citing *Lauritzen*, 345 U.S. at 584–86), the law of the flag "should not be accorded controlling weight" in cases involving drilling rigs, rather than vessels "engaged in traditional, blue-water maritime activities crossing through waters of competing nations." *Id.* at 906–907 (citing *Chiazor v. Transworld Drilling Co.*, 648 F.2d 1015, 1019 (5th Cir. 1981), *overruled on other grounds, In re Air Crash Disaster*, 821 F.2d 1147, 1163 n.25 (5th Cir. 1987)); *see Chiazor*, 648 F.2d at 1016–19 (an accident on a submersible drilling rig located in offshore waters; the law of the flag was important but not controlling); *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82, 83–84 (9th Cir. 1980) (same).  As in *Solano*, *Chiazor*, and *Phillips*, this is not a traditional maritime case involving a navigable vessel that frequently changes location, but rather a fixed rig located offshore.  This factor is important, but it is not given controlling weight.

### c.     The Allegiance or Domicile of the Injured

The parties agree that Ronald Butler is a United States citizen.  Because the case involves a fixed drilling rig rather than a navigable vessel, this factor has "added significance," *Solano*, 212 F.3d at 907, and weighs in favor of applying the law of the United States.

### d.     The Allegiance of the Shipowner

In damages actions for personal injuries occurring on a drilling platform, the allegiance of the defendant shipowner has less importance than in cases involving injuries on navigable vessels.

*Solano*, 212 F.3d at 907. ENSCO Intercontinental is a Swiss company. This factor does not favor applying either the law of the United States or of the Marshall Islands.

### e. The Place of Contract

The parties agree that this factor is irrelevant in this case.

### f. The Inaccessibility of the Foreign Forum

Because this factor is relevant to *forum non conveniens*, which is not the issue here, it need not be considered. *Lauritzen*, 345 U.S. at 589–90; *Coats*, 61 F.3d at 1120.

### g. The Law of the Forum

The parties agree that this factor points to the United States, but they disagree about how much weight it should be given. This factor is "fortuitous" because of the nature of maritime jurisdiction. The "[j]urisdiction of maritime cases in all countries is so wide and the nature of its subject matter so far-flung that there would be no justification for altering the law of a controversy just because local jurisdiction of the parties is obtainable." *Lauritzen*, 345 U.S. at 591. Whatever weight the law-of-the-forum factor has, it favors applying United States law. *Fogleman*, 920 F.2d at 283.

### h. The Base of Operations of the Ship Owner

This final factor is disputed. A vessel's base of operations is where its day-to-day operations are controlled. *Id.* at 284. In *Coats*, the defendant rig owner and operator had an office in the United Arab Emirates that assisted in the rig's operations. 61 F.3d at 1120. The rig superintendent in that office frequently used faxes to communicate with the corresponding office in Dallas. *Id.* The Fifth Circuit found that despite the frequent contacts with the United States and the number of

9

American employees, the rig's day-to-day operations were conducted in the United Arab Emirates. *Id.* at 1121.

The ENSCO defendants submitted declarations showing that the day-to-day decisions about the rig's operations were made by the rig manager aboard the vessel in Angolan waters. (Docket Entry No. 16, Ex. 3 at ¶¶ 6–7). The rig manager worked out of an office in Angola and reported to the Dubai office of a related ENSCO company. (*Id.* at ¶¶ 6–9).

Butler contends that the day-to-day operations of the rig were controlled in Houston. He points out that the medic who treated him on the rig had a Houston phone number; he was sent to Houston for training and a preemployment physical; ENSCO Incorporated's Houston office was listed as the "requestor" of the physical; and he met with Houston personnel monthly to make travel arrangements for his work assignments. (Docket Entry No. 6, Exs. A, E).

Construing the evidence in Butler's favor shows that rig-support services may have been done by ENSCO Incorporated's Houston office. But this evidence does not establish where the rig's day-to-day operations were controlled. *See Coats,* 61 F.3d at 1120–21; *Bailey*, 697 F.2d at 1275 n.22 (even assuming a United States flag vessel, owned by a United States corporation, based in the United States, foreign law applied because "day-to-day operational decisions were made in Singapore and Indonesia"). Despite the support services provided to the ENSCO DS-6 rig in the United States, the day-to-day rig operations were controlled and occurred in Angola. This factor weighs against applying United States law.

### i.      Balancing the factors

The factors in this case point to several possible countries for the source of the controlling law. They include the United States, Angola, the Marshall Islands, Switzerland, and the Cayman Islands. Although the question is a close one, discounting the factors of the law of the flag, the allegiance of the defendants, the place of the injury, and the place where the rig's day-to-day operations were controlled—factors favoring applying the law of the Marshall Islands, Switzerland, or the Cayman Islands—and giving more weight to Butler's citizenship and residence—factors favoring applying the United States law—and construing the governing law in Butler's favor, the balance would appear to weigh against applying the Jones Act. But because the question is a close one, a more conservative approach is to say that there could be a "reasonable basis for predicting that the plaintiff might establish liability" under the Jones Act. *See Solano*, 212 F.3d at 907. The court therefore completes the necessary analysis.

### B.      ENSCO Incorporated

The court next turns to whether Butler improperly joined ENSCO Incorporated.[4] An "employer-employee relationship is an absolute prerequisite to Jones Act liability." *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 178 (5th Cir. 2005). To determine a seamen's Jones Act employer, "[o]ne must look at the venture as a whole. Whose orders controlled the master and the crew? Whose money paid their wages? Who hired the crew? Whose initiative and judgment

---

[4] ENSCO Incorporated presents its arguments that it is not Butler's employer in a motion for summary judgment, Docket Entry No. 13, that it incorporates by reference into its response to Butler's motion to remand, Docket Entry No. 16. The court considers the arguments, but through the improper joinder lens—whether there is a reasonable possibility that Butler could recover on his Jones Act claims against ENSCO Incorporated. *Flagg*, 819 F.3d at 136.

chose the route and the ports?" *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 791 (1949).

Butler's state court petition sets out global allegations against all defendants. Butler alleged that: the rig he worked on was "owned, operated, and/or managed by Defendants," (Docket Entry No. 1-3 at 55); the "Defendants were negligent, negligent per se, and grossly negligent,'" (*Id.* at 56); and the "Defendants have willfully, wantonly, arbitrarily, and capriciously failed to live up to . . . maintenance and cure obligations." (*Id.* at 57).

ENSCO Incorporated contends that Butler has no reasonable possibility to recover against it under the Jones Act because it was not the rig's owner, operator, or manager, and it did not employ Butler or other crew members. ENSCO Incorporated attached a declaration from the managing officer of ENSCO Intercontinental, stating that ENSCO Intercontinental owned and operated the rig and that ENSCO Limited employed Butler. (Docket Entry No. 16, Ex A). ENSCO Limited's human-resources manager provided a declaration stating that ENSCO Limited's Dubai office, specifically the human-resources manager, hired Butler. (Docket Entry No. 16, Ex. D at ¶ 5). The declaration also states that while a recruiter representing ENSCO Incorporated "may have been used to facilitate new hire documents, such as Mr. Butler's new hire physical," the recruiter "did not play any role as to whether Mr. Butler would be hired," and that an ENSCO Limited employee—the rig's drilling superintendent—terminated Butler's employment. (*Id.* at ¶¶ 8, 12).

In response, Butler points to one of ENSCO Incorporated's exhibits, an affidavit by ENSCO Incorporated's tax manager detailing a "Master Service Agreement" between ENSCO Incorporated and Ensco International plc (an English company not a party to this suit) and their affiliates,

12

including ENSCO Limited. (Docket Entry No. 16, Ex. E at ¶¶ 2–3). Butler asserts that this Agreement supports a reasonable possibility of recovery under the Jones Act against ENSCO Incorporated because it agreed to provide "administrative support services" to Ensco International and its affiliates. The services included "tax and accounting services; human resources; employee benefits programs (including the handling of maintenance and cure); and services for personnel recruitment, evaluation and training." (*Id.* at ¶ 4). But the affidavit by ENSCO Incorporated's tax manager also states that "ENSCO Incorporated does not own or manage drilling rigs and does not perform the day-to-day supervision and/or direction of the crew on a rig. ENSCO Incorporated does not employ any rig-based personnel." (*Id.* at ¶ 6).

Butler does not argue that ENSCO Incorporated is his employer. (*See* Docket Entry Nos. 6, 18). Even construing all disputed facts in Butler's favor, the undisputed record shows that ENSCO Limited, not ENSCO Incorporated, was Butler's employer. There is no reasonable basis to predict that Butler will recover against ENSCO Incorporated on his Jones Act claims.

### B. The General Maritime Claims

Although Butler cannot assert Jones Act claims against ENSCO Incorporated, the general maritime claims against it remain. ENSCO Incorporated asserts that it has no reasonable basis to be held liable under these claims and that it was improperly joined to defeat removal. Butler asserts that ENSCO Incorporated's involvement through the Master Service Agreement subjects it to liability, making remand proper.

A case is not removable based on diversity jurisdiction if any defendant is a citizen of the state in which the action is brought. *See In re 1994 Exxon Chem. Fire,* 558 F.3d at 391 (citing 28

U.S.C. § 1441(b)).  This "forum-defendant rule" is a procedural, not a jurisdictional, requirement. *See id.* at 392–95.  Failure to meet this requirement produces a waivable defect in the statutory removal procedural, rather than a lack of subject-matter jurisdiction.  The parties are diverse, but ENSCO Incorporated is a forum defendant.

The parties assume that the improper-joinder doctrine applies to the forum-defendant rule. The doctrine arose in the context of in-state nondiverse defendants.  "[T]he most common device used to destroy diversity of citizenship jurisdiction and the possibility of removal is for a state court plaintiff to join a party whose presence in the case creates the prohibited cocitizenship on both sides of the litigation, thereby preventing satisfaction of the complete diversity rule."  13F Charles A. Wright & Arthur Miller, et al., FEDERAL PRACTICE AND PROCEDURE, § 3641.1 (3d ed. 2013).  The improper-joinder doctrine in this context "ensures that the presence of an improperly joined, *non-diverse defendant* does not defeat federal removal jurisdiction premised on diversity."  *Ross v. Nationwide Prop. & Cas. Ins. Co.*, 2013 WL 1290225, at *2 (S.D. Tex. 2013) (emphasis added) (citing *Borden v. Allstate*, 589 F.3d 168, 171 (5th Cir. 2009)).  The improper-joinder doctrine allows a court to "ignore an improperly joined, *non-diverse defendant* in determining subject matter jurisdiction."  *Id.* (citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc) (emphasis added)).  The parties here are diverse.  Butler is an Oklahoma citizen, and ENSCO Incorporated is a Texas citizen.  Because there is complete diversity, this case presents a variation on the traditional application of the improper-joinder doctrine.

Some courts recognize that "[t]he law is not as well settled regarding whether [the] improper joinder doctrine can extend to situations where *diverse in-state defendants* are joined in an effort to

defeat removal under the forum-defendant rule," *OAM Corp. v. Owners Ins. Co.*, No. 3:13-cv-3872, 2013 WL 12128782, at *2 (N.D. Tex. Dec. 5, 2013), but assumed, without deciding, that the improper-joinder doctrine extends to joinder of a diverse forum defendant. *Id.*  But at least one district court in this circuit has held that the improper-joinder doctrine does not apply. *Tipton v. Landen*, No. 6:15-cv-2811, 2016 WL 919539, at *6 (W.D. La. Mar. 8, 2016).  Other district courts have held that the improper-joinder doctrine has already been extended to apply in the forum-defendant context in *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 571 (5th Cir. 2004) (en banc), and *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788 (5th Cir. 2014). *See, e.g., Taylor v. Cavender Buick of Texas Ltd.*, No. SA-16-cv-724, 2016 WL 6581353, at *1–*2 (W.D. Tex. Nov. 7, 2016) (citing *African Methodist*); *Aguilar v. Wal-Mart Stores Texas, LLC*, No. 1:14-cv-245, 2015 WL 11023492, at *3–*4 (E.D. Tex. Jan. 6, 2015) (citing *Smallwood*).

It is unclear that *Smallwood* and *African Methodist* resolve the issue.  Both cases involved at least one nondiverse defendant. *African Methodist*, 756 F.3d at 791–93; *Smallwood*, 385 F.3d at 571–72.  The Fifth Circuit used the improper-joinder doctrine to determine whether there was no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant who had the same citizenship as the plaintiff. *African Methodist*, 756 F.3d at 795–96; *Smallwood*, 385 F.3d at 574–77.  In both cases, the Fifth Circuit found that the nondiverse defendants were properly joined and remanded to the state court because the federal court lacked subject-matter jurisdiction. *African Methodist*, 756 F.3d at 796; *Smallwood*, 385 F.3d at 576–77.  The Fifth Circuit has not addressed the present "fairly peculiar situation." *OAM Corp.*, 2013 WL 12128782 at *2.  The Seventh Circuit has analyzed the issue, but without deciding it. *See Morris*

*v. Nuzzo*, 718 F.3d 660, 666–71 (2013).  Because this court determines that one of Butler's claims against ENSCO Incorporated was properly joined and remand is required, it is not necessary to decide whether the improper-joinder doctrine applies when there is an in-state defendant and complete diversity.

As noted above, to determine whether a plaintiff has a reasonable possibility of recovery in the claims against the defendant asserting improper joinder, the court performs a Rule 12(b)(6)-type analysis.  *Flagg*, 819 F.3d at 136.  If the plaintiff has omitted or misstated discrete facts, the court may pierce the pleadings and conduct a summary inquiry.  *Id.* at 136–37.  This summary inquiry is not intended to be expansive.  The cited examples of appropriate cases for a summary inquiry involved: an "in-state doctor defendant [who] did not treat the plaintiff patient, [an] in-state pharmacist defendant [who] did not fill a prescription for the plaintiff patient, a party[] [whose] residence was not as alleged, or any other fact that easily can be disproved if not true." *Smallwood*, 385 F.3d at 574 n.12.  The *Smallwood* court cautioned district courts from wandering too far into the weeds in the improper-joinder inquiry.  "Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.* at 574.  The "summary judgment-like procedure" for resolving improper-joinder arguments includes considering affidavits and deposition testimony. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 311 (5th Cir. 2005) (citing *Carriere v. Sears, Roebuck*

*& Co.*, 893 F.2d 98, 100 (5th Cir. 1990) ("When determining fraudulent joinder, the district court may look to the facts as established by summary judgment evidence as well as the controlling state law."); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)). The burden is on the moving defendant to demonstrate that the plaintiff has no reasonable possibility of recovery on the asserted claims. *Smallwood*, 385 F.3d at 573.

ENSCO Incorporated urges a summary inquiry and includes a declaration from its manager of risk management claims. (Docket Entry No. 13, Ex. A). ENSCO Incorporated argues that it neither employed Butler nor owned nor operated the rig on which he worked. Again, Butler asserts that the Master Service Agreement ENSCO Incorporated had with Ensco International and its affiliates provides a basis to find that it could recover under its general maritime claims.

Butler asserted a maintenance and cure claim against ENSCO Incorporated. The duty of maintenance and cure "arises from the contract of employment." *Calmar S. S. Corp. v. Taylor*, 303 U.S. 525, 527 (1938); *see Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015) ("It is hornbook law that the maintenance and cure duty extends only to the seaman's employer, or, in some cases, to the vessel *in rem*. Because [the supervisor] was not [the plaintiff's] employer, he cannot be liable for maintenance and cure."). Maintenance and cure is a "contractual form of compensation afforded by the general maritime law to seamen who . . . are injured while in the service of a vessel" and is "treated as an implied term of any contract for maritime employment." *Meche*, 777 F.3d at 244. Construing the law and facts in Butler's favor, he has no reasonable possibility of recovery against ENSCO Incorporated for maintenance and cure because it was not his employer. *See id.*

17

Butler also asserts that ENSCO Incorporated breached its duty to provide a seaworthy vessel. A claim for unseaworthiness must be asserted against either the vessel's owner or owner *pro hac vice*. *Coakley v. SeaRiver Mar., Inc.*, 143 F. App'x 565, 566 (5th Cir. 2005) (citing *Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213, 1215 (5th Cir.1993); *Guidry v. Cont'l Oil Co.*, 640 F.2d 523, 530 (5th Cir. 1981)); *see Pitre v. Tetra Techs., Inc.*, No. 06-4504, 2008 WL 4831657, at *4 (E.D. La. Nov. 6, 2008) ("[A] seaman may not directly recover . . . damages for unseaworthiness from third parties who are not the shipowner, the operator of the vessel, or the seaman's employer."). Butler has no reasonable possibility of recovery against ENSCO Incorporated for unseaworthiness because ENSCO Intercontinental owned and operated the rig. (Docket Entry No. 13, Ex. A at ¶ 7).

Butler also asserted a general maritime negligence claim against ENSCO Incorporated. To state a negligence claim under maritime law, the "plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010). ENSCO Incorporated contends that because it did not own or operate the rig or employ Butler, it owed no duty to him. Butler again points to the Master Service Agreement, in which ENSCO Incorporated provided "services for personnel recruitment, evaluation, and training." (Docket Entry No. 16, Ex. E at ¶ 4). Butler alleges that his injuries occurred after a fellow seaman knocked him to the ground. (Docket Entry No. 1-3 at 55–56). Construing these facts in Butler's favor, ENSCO Incorporated had the responsibility to train seaman. ENSCO Incorporated has not shown that Butler has no reasonable possibility of

18

recovery against it on the negligent training claim he asserts. *Nelton v. Cenac Towing Co., LLC*, No. CIV.A. 10-373, 2010 WL 4116851, at *3 (E.D. La. Oct. 19, 2010) (denying summary judgment on a Jones Act negligence claim because the plaintiff seaman presented evidence that the defendant employer failed to provide adequate training). ENSCO Incorporated has not carried its heavy burden to show that it was improperly joined on this claim.

Because the defendants are properly joined and the Jones Act claim is not removable, remand is required.

### III. Conclusion

The court grants Butler's motion to remand. (Docket Entry No. 6). By separate order, this case is remanded to the to the 157th Judicial District Court of Harris County, Texas.

SIGNED on February 7, 2017, at Houston, Texas.

_____

Lee H. Rosenthal
Chief United States District Judge